J. L. HEARN, AGENT, MRS. R. A. HEARN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19818. Promulgated March 26, 1929.

*G. Drummond Hunt, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, for the respondent.

OPINION.

Love: Upon the facts, we must decide the issue in favor of the respondent.

It is admitted that for reasons that seemed expedient to those concerned, there was no transfer or assignment of the land itself or the oil and gas leases that were executed thereon. The title to these was in Mrs. R. A. Hearn and, for anything that appears in the record, so remained to the day of her death. The contention advanced is that at the family meeting of August 20, 1922, Mrs. Hearn then and there made a parol assignment of one-half of the rents and revenues that might be derived from this property.

We are of the opinion that the evidence is not sufficiently strong to support the contention that such a parol assignment was actually made. According to the witness J. L. Hearn, his mother used the words: "I want to make * * * at this time" such a division. He is partly corroborated by his brother, Robert L. Hearn, who testified: "During this meeting my mother stated she wanted to deed us our father's undivided one-half interest in this piece of land. I objected on the ground I stated that we would never have an opportunity of getting anything out of it. * * * The others agreed with me. Then she said: 'If we do that, I would like to give a one-half interest of any rents or revenues that might be derived from the sale of this land, either rents, royalties or leases that might come in.'" The words "at this time" do not appear in the testimony of Robert L. Hearn, and except these two men, none of the others who were present at that meeting were called to the stand.

The leasing of the oil and gas rights almost immediately followed the meeting and the distribution of the bonuses received on such leases was even more liberal and generous than that which Mrs. Hearn proposed at the time of the meeting, but, even so, admitting the full strength of the petitioner's contentions on this point, it is far from certain that Mrs. Hearn understood that she was then making the gift rather than expressing her intention of making it as soon as the proceeds of the leases came into her possession. From the record it appears that such proceeds were not only in the future, but uncertain. She had no definite rents or revenues to give away on August 20, 1922, and no right *in praesenti* to any income, and it was

not before September 5 in one case, and September 9 in the other, that these proceeds or bonuses were realized and came into her possession, or that of her agent. The checks are not in evidence, so we do not know to whose order they were drawn. The words that Mrs. Hearn is quoted as using at the meeting—"I *do want* to have an understanding; I *do want* to make a division at this time," and "I *would like* to give a one-half interest of any rents or revenues that *might be derived* from the sale of this land," are not explicit enough, in our judgment, to prove that then and there she did make the gift, or attempted to make it, rather than that she was expressing her desire and purpose to make it.

The words seem to us to import an intention and a purpose to be later fulfilled; an "understanding" that "the rents and revenues that *might* be derived from the sale of this land" shall be partitioned as and when received, in accordance with the division determined upon at the family gathering of August 20. To construe them as constituting an actual and absolute assignment as of that date would be, we think, to attach to them an implicit meaning which their explicit expression is far from warranting.

The consideration of delay that might affect the negotiations, which is advanced as the reason preventing the outright deed of a one-half interest in the land itself or the leases thereon, has no weight in connection with the assignment of the profits from such land or leases; and we are of the opinion that if such a gift had irrevocably been intended by her as of the date of the meeting, common caution and prudence on the part of the prospective beneficiaries would have dictated the execution of some instrument or writing that would have placed such intention on her part forever beyond doubt or cavil.

The well settled rule at common law seems to defeat the assignment or transfer of property not in existence and not in the actual or potential possession of the assignor at the time of the assignment, or the assignment of a possibility not founded on a right or coupled with an interest. But even a mere possibility, if coupled with an interest, is capable of being conveyed or assigned at common law. Thus, where the assignor has a present interest in that of which the thing assigned is the product, growth, or increase, he has a present vested right to such future product, growth, or increase when it shall come into existence, which right is assignable.

In the instant case, however, it is admitted that there was no assignment in writing, and we do not find the evidence of sufficient strength to establish an assignment by parol, so that there is no necessity to inquire into the purpose and effect of those Texas statutes which might otherwise be applicable. This contention of the petitioner is denied.

The petitioner contends further that when the money was turned over by the escrow agent to J. L. Hearn, there was then effective a trust in favor of the children, impressed upon one-half of the money, having been voluntarily created by the antecedent declarations, directions and acts of Mrs. R. A. Hearn, the owner of the land. We do not concur.

The two escrow contracts were executed by Mrs. R. A. Hearn in person. When their terms had been complied with and the escrow agent released thereunder, one such release was signed " Mrs. R. A. Hearn, by J. L. Hearn," and the other " Mrs. R. A. Hearn, J. L. H." We do not know to whose order the check or checks were drawn by the escrow agent, the First State Bank of Kosse, Tex.; but it is in evidence that it or they were deposited to the credit of " J. L. Hearn, Special Account," and not to his account as trustee. If an explicit or implied trust had been created, Mr. Hearn could then have proceeded to divide the funds in accordance with the well understood terms and provisions of that trust, but he did not do that. Instead, he told his mother that he had completed the two transactions, that he had paid all necessary expenses, commissions, and so forth, and that he was ready to make *a* division according to her agreement with her children. The inference is so strong as hardly to be avoided that he went to his mother for instructions as to how the division should be made, and here the indefinite article italicized above is significant, not *the* division that already had been actually determined and agreed upon, but some division, the portions of which were then to be decided. And those portions were wholly different and much more generous than those in contemplation at the family meeting of August 20. At that time, according to the evidence, Mrs. Hearn was to retain for herself 50 per cent of the net amount received; in the actual distribution she did retain less than 19 per cent. Under such circumstances, we can not concede that any specific or implied trust in favor of the children was impressed upon one-half of the net proceeds of these oil and gas leases at the time of and coincident with the receipt of this money from the escrow agent. J. L. Hearn undoubtedly held the money in trust for his mother and it is our opinion that she could then have lawfully demanded all of it, and that no trust in favor of her children and grandson arose or was created until " a few days before the distribution of this amount was made," when she gave to her agent specific instructions as to its final apportionment and disposition. This contention, also, of the petitioner is denied, and the third, unsupported, falls of its own weight.

The Board has, in a number of cases, held in effect that income to arise in the future is not assignable in such a way as to avoid taxation to the assigning taxpayer. See *Ormsby McKnight Mitchel,*

1 B. T. A. 143; *Fred W. Warner*, 5 B. T. A. 963; *Ella Daly King, Executrix*, 10 B. T. A. 698; and *David Copland*, 15 B. T. A. 238. These cases all differ in certain aspects, but we have nothing before us which we recognize as demanding a different conclusion here.

*Judgment will be entered for the respondent.*