LOUIS J. REIZENSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39806. Filed June 30, 1954.

*Louis Caplan, Esq.,* for the petitioner.
*Phillip O. North, Esq.,* for the respondent.

844

### OPINION.

Murdock, *Judge:* The Commissioner has held that the income of the trust is taxable to the petitioner because the petitioner retained so much control over the trust that he remained for practical purposes the owner of its income within the meaning of section 22 (a) and *Helvering* v. *Clifford*, 309 U. S. 331 (see also *Commissioner* v. *Buck*, 120 F. 2d 775, and *Brown* v. *Commissioner*, 131 F. 2d 640, certiorari denied 318 U. S. 767) ; the trust was revocable and the income is taxable to the petitioner under section 166; or the petitioner could cause the income to be distributed to him and it is taxable to him under section 167 (a) (2). The petitioner claims that he created a parol trust in December 1942 which was irrevocable and deprived him forever of any benefit directly or indirectly from the income from the trust property and of any possibility of recovering the principal. He says he created the trust by a conversation or conversations between himself and Florence. He does not claim that there was any third party present at the time or times that the conversations took place.

Concededly a valid trust may be created orally without any written declaration of trust but the disadvantage to the Commissioner and the danger to the revenues of accepting too readily the alleged detailed tax saving restrictions of such a trust on the grantor are obvious. It is readily apparent that such a trust could be effective for tax purposes to no greater extent than the various provisions stated by the petitioner were clearly understood and remembered by Florence. Any uncertainty or omission is of his own making (he could have made a written declaration of trust instead of relying upon parol) and doubts may fairly be resolved against him. Cf. *Cohan* v. *Commissioner*, 39 F. 2d 540. Careful scrutiny of the testimony of the petitioner and Florence is essential in order to determine just what limitations on the rights of the petitioner as grantor clearly appear and can safely be found as facts. This does not mean, however, that the mind should be closed to the possibility that there were the limitations claimed but they must clearly appear from the record to overcome the presumption of correctness attaching to the determination of the Commissioner.

Florence was asked on direct examination what her husband told her when they had a conversation as to the terms of the trust. She said they had some conversation about putting aside some savings for their son which would be his when he matured; her husband explained to her that it was necessary to set up a trust of which she would be trustee; she was to hold and invest the principal and income of the trust "until such time as David reached the age of maturity"; after which she added: "Well, there was conversation about what time after 21 he was to get them, and we decided at the time that the trust was set up in our own mind it was any time after 21. Subsequently we de-

cided that it should be 25." The last question in her direct examination had her adopt her husband's testimony instead of giving her own on a vital point. It was: "I believe you heard Mr. Reizenstein refer to what was to happen to the principal of this trust and the accumulated income in the event of David's death. Is that a correct statement that he made?" She answered "Yes." Her knowledge of the terms of the trust was not further developed by counsel and the Court attempted to find out what she knew of her husband's statements after counsel had finished with her as a witness:

The COURT. Mrs. Reizenstein, do I understand that at some time your husband informed you about these securities that he turned over to you? Is that right?

The WITNESS. Oh, yes.

The COURT. What day was it?

The WITNESS. In 1942, you mean?

The COURT. Whenever it was.

The WITNESS. Yes. The stock in Falk & Company which I had originally was 14 shares, and it later became 140 shares.

The COURT. I am not concerned about the details of the number of shares. Where were you and when was it when this conversation took place between you and your husband upon which you are relying?

The WITNESS. We were at home and in conversation about putting aside some sums of money for our son and it was then decided what specific sums or stock would be the first transfer, and I recall that the stock of Falk & Company and Falk Chemical Company were mentioned.

The COURT. Would you please state for the record the complete conversation between you and your husband at that time, in which he told you what the arrangement was to be in that?

The WITNESS. Yes, as far as I can remember. He explained to me that because we both wanted to have some moneys put aside—that was prior to this conversation—for our son, and then he had some conversation with his attorney and explained it to me further that it was not good sense to give a child outright, a boy that young, and that as the result, we ought to set up a trust and he could have no control over such a trust, but that I was chosen to be the trustee.

The COURT. Is that all he said about it?

The WITNESS. Well, except that he explained what a trust was, and that I was to have complete control of this money until David became of age.

The COURT. 21?

The WITNESS. It was at least 21.

The COURT. Is there anything else that you recall?

The WITNESS. No, I don't.

Thereafter, the following redirect examination took place:

Q. You did testify that there was some conversation with your husband in connection with the creation of this trust, about what was to occur in the event of David's death. Was that at the time that the Court asked you about?

A. I am not sure whether it was at that conversation, but there were conversations about what would happen to this money. Our attorney happened to be living downstairs from us, and from time to time we had conversations subsequently, about this. I knew that in case of David's death that the moneys would revert to me and that, in the case of my death, they would go to my heirs.

Q. Including your husband?

A. No; that was explained, that that was not possible, that no funds were to go to him if it were to be a trust.

Florence was inexperienced in business and apparently relied upon the petitioner's explanation of the character of a trust. Just what that was or what she understood about the law of trusts has not been shown except as her answers may indicate the extent of her knowledge on the subject. It does not appear that she understood anything about revocability or that the subject was mentioned to her. She did not use that word, the word "irrevocable," or any other form of either word in her testimony. She testified to changes in the arrangement which were made, indicating clearly that he retained at least the power to alter and amend the trust. The record contains ambiguities and contradictions as to the origin and terms of the trust which seriously hurt the petitioner's case. Cf. *Moskin* v. *Johnson*, 115 F. Supp. 565.

Florence failed under questioning to give any date upon which the conversation creating the trust took place. There is considerable confusion as to dates in the record. Those given in the 1942 gift tax returns are "1942," "12/21/42," and "12/1/42." Stock was transferred to David on April 22, 1942, and on January 23, 1943, and to Florence in trust for David on December 30, 1942, and January 14, 1944. No date for the creation of the trust was mentioned in an affidavit sworn to by the petitioner and Florence on December 21, 1950, but they stated, in a schedule attached thereto, that the petitioner had transferred the 14 shares of Falk & Company stock to "Florence S. Reizenstein, in trust for David L. Reizenstein" in 1939. The petitioner and Florence state in the document dated February 1, 1954, that they are acknowledging "an Agreement of Trust made the 17th day of August 1945, between Louis J. Reizenstein, hereinafter referred to as the 'Grantor', and Florence S. Reizenstein, hereinafter referred to as the 'Trustee.'" It refers to no earlier trust and has attached a schedule substantially the same as the schedule attached to the affidavit of December 21, 1950. The wide variations in the written statements of these two witnesses does not increase the confidence which may be placed safely in their testimony, and it leaves in great doubt the date upon which agreement was reached as to any particular trust provision.

A trust of some kind for David with Florence as trustee and the petitioner as grantor was in existence during 1947. None of the trust funds was used for the support of David or used for the benefit of the petitioner. Testimony of the petitioner and Florence can be found in the record which, if given full credence, would go a long way towards supporting the petitioner's contention. However, considerable doubt is cast upon it by other evidence in the record. Florence stated that she was inexperienced in business matters and relied upon her husband in administering the trust and keeping its records. He made decisions, wrote checks, and took action for her. The trust was handled as a

family affair. The petitioner was named as coowner of United States Series E bonds purchased with trust funds when Florence could have been named instead, and trust funds were held in a bank account entitled "Louis J. Reizenstein or Florence S. Reizenstein in trust for David L. Reizenstein."

The record as a whole leaves the Court in real doubt as to what the provisions of the trust were which might limit the retained powers of the petitioner as grantor and it cannot make findings which would call for a reversal of the determination of the Commissioner.

*Decision will be entered for the respondent.*