C. O. BIBBY AND MARIE BIBBY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4903-63. Filed July 26, 1965.

*Leslie C. Hackler, Jr.*, for the petitioners.
*James F. Hart*, for the respondent.

TRAIN, *Judge:* Respondent determined deficiencies in petitioners' income taxes as follows:

| Year ended— | Deficiency |
| --- | --- |
| Feb. 28, 1959 | $4,456.73 |
| Feb. 29, 1960 | 3,030.13 |
| Feb. 28, 1961 | 2,770.36 |

The basic issue remaining for our decision, after certain concessions embodied in the parties' stipulation, is whether or not the income reported by a trust established by petitioners is taxable to them because the trust fails to satisfy the requirements of section 671 *et seq.* of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

C. O. Bibby and Marie Bibby (sometimes hereinafter referred to as petitioners) are husband and wife residing in Olton, Tex. They filed joint Federal income tax returns for the years ended February 28,

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

1959, February 29, 1960, and February 28, 1961, with the district director of internal revenue at Dallas, Tex. Petitioners utilized the cash receipts and expenditures method of accounting.

Kathy Elaine Bibby and LaVerne Bibby (sometimes hereinafter referred to as Kathy and LaVerne) are the daughters of petitioners. LaVerne was born on July 3, 1940, and Kathy was born on January 1, 1953.

In April 1957, a meeting was held in petitioners' home, at which time the petitioners decided to establish a trust for the benefit of their daughters. S. E. Hale, who was at the time a trust officer at a bank in Amarillo, Tex., but who was not an attorney, was asked by petitioners to prepare for them a trust agreement and a will.

On September 3, 1957, petitioners as settlors executed an instrument entitled "Trust Agreement," naming themselves as the trustees, and providing as follows:

### TRUST AGREEMENT

THIS AGREEMENT, entered into on the 3rd day of September, 1957, by and between Cecil Orlan Bibby and Opal Marie Bibby, hereinafter referred to as the "Settlors", and Cecil Orlan and Opal Marie Bibby, hereinafter referred to as the "Trustees".

### WITNESSETH

That the Settlors have this day transferred and delivered and does [sic] hereby transfer, assign and convey to the Trustees the property shown on the Schedule attached hereto and made a part hereof to be held in Trust by the Trustees for the uses and trusts hereinafter set-forth and for the beneficiary hereinafter named.

#### ONE

The term of this Trust shall be for ten years and one day from the date of the execution hereof, or until the date of death of the Beneficiary, whichever sooner occurs, and this Trust shall thereupon terminate and final distribution of the corpus and any accumulated income hereof shall be made at such time under the provisions hereinafter set-forth.

#### TWO

The Settlors shall have no power to alter, amend, revoke in whole or in part, this Trust prior to its termination in accordance with Item one hereof.

#### THREE

Upon the termination of this Trust, should the Beneficiary be living Ten (10) years and one (1) day hence, the corpus hereof, but no income or accumulations or accretions of income, shall be distributed by the Trustees, free of Trust, to the Settlors, their executors, administrators or assigns. Upon the termination of this Trust, should the Beneficiary not survive the Ten (10) year and one (1) day period, the corpus hereof, but no income or accumulations or accretions of income, shall be distributed by the Trustees, free of Trust, to the Settlors, their executors, administrators or assigns. The Trustees shall have some discretion to make this distribution in kind, specie, or otherwise, wholly or in part.

FOUR

The income from this Trust shall be used for the benefit of <u>Kathy Elaine Bibby and LaVerne Bibby</u>, and as such the Trustees shall have sole discretion to distribute the income to, apply income for, or withhold income from the Beneficiary, all in accordance with the basic purposes and terms of this Trust.

FIVE

In the management, care and disposition of this Trust, the Trustees shall have the power to do all things; and to execute such instruments as may be deemed necessary or proper; including the following powers; all of which may be exercised without order of or report to any court:

1. To retain by way of investment, any property constituting the original property placed in this trust.

2. To invest all monies, including income from the corpus of this trust, in such stocks, bonds, securities, mortgages, loans, notes, real estate, improvements thereon, and other property such as specifically farm and ranch lands, as the Trustees may deem best, without regard to any law now or hereafter in force limiting the investment for Trustees or other fiduciaries.

3. To vote in person or by proxy any corporate stock or other property or other security and to agree to or take any other action or other procedure or proceedings affecting stock, bonds, notes, or other property or security.

4. To build buildings and repair same, to repair and build fences; and dig irrigation ditches or drill water wells, to and on any farm or other real property held in this Trust.

5. Or to do any other legal or lawful thing in connection with the assets of this Trust that a prudent individual would do, so long as such actions inure for the best interest of this Trust.

6. The Trustees shall, at least annually, furnish the Beneficiary or his representative a statement showing the property then held by the Trustees and the receipts and disbursements hereunder, but the Trustees shall not be required to make or file any inventory or appraisement or file annual or other returns to any court, or give bond.

7. Whenever the Trustees are directed to distribute any money or property to the Beneficiary, the Trustees shall not require the appointment of a guardian, but shall be authorized to distribute the same over to the person or persons having custody of the Beneficiary, or direct to the Beneficiary himself or herself.

It is understood that wherever the word "Beneficiary" is used herein that such beneficiary may include more than one individual as may be indicated by the names written in on the first page of this agreement.

IN WITNESS WHEREOF, the Settlors and Trustees have hereunder (on the following page) set their hand on the date above written.

(S)   C. O. BIBBY,
*Settlor.*

(S)   OPAL MARIE BIBBY,
*Settlor.*

(S)   C. O. BIBBY,
*Trustee.*

(S)   OPAL MARIE BIBBY,
*Trustee.*

The above trust agreement was received by petitioners from S. E. Hale in September 1957. No schedule of the property said to have been transferred to the trust was attached to the trust instrument.

In 1955 petitioners acquired a 320-acre farm in Deaf Smith County,

Tex., which is sometimes hereinafter referred to as the Deaf Smith County farm. C. O. Bibby operated this farm, which was located approximately 60 miles from petitioners' home in Lamb County, Tex.

Sometime before August 20, 1958, petitioners executed a warranty deed which recites conveyance of the Deaf Smith County farm to themselves as trustees for the benefit of Kathy and LaVerne, under the terms of the trust agreement dated September 3, 1957. The warranty deed was recorded in Deaf Smith County, Tex., on August 20, 1958.

A fiduciary income tax return, Form 1041, was filed by "Kathy and LaVerne Bibby Short Term Trust" (sometimes hereinafter referred to as the trust) for the taxable year ended February 28, 1958 (erroneously stated to end March 1, 1958), which reported the following:

| | |
|---|---|
| Total income | $8,143.57 |
| Deductions | 2,043.57 |
| Net income | 6,100.00 |
| Deduction for distribution to beneficiaries | (6,000.00) |
| Exemption | (100.00) |
| Taxable income | None |

A similar return filed for the taxable year ended February 28, 1959, reported the following:

| | | |
|---|---|---|
| Total income | | $7,126.66 |
| Deductions | | 2,043.56 |
| Net income | | 5,083.10 |
| Deduction for distribution to beneficiaries | $4,983.10 | |
| Exemption | 100.00 | 5,083.10 |
| Taxable income | | None |

The statutory notice of deficiency herein included the income reported by the trust in the taxable income of the petitioners and contained the following explanation:

It is determined that the income reported on the Fiduciary income tax return filed for Kathy and LaVerne Bibby Trust for the taxable year ended February 28, 1959 is includable in your community income for the taxable year ended February 28, 1959 under the internal revenue laws. The amount of such income included in your community income by this adjustment is $5,083.10, the amount of the income shown on the Fiduciary income tax return before any distribution of such income. Your community income has been increased accordingly.

In a warranty deed executed on January 29, 1959, petitioners, individually and as trustees, sold the Deaf Smith County farm to John G. Spinhirne (sometimes hereinafter referred to as Spinhirne) for $70,000, of which $10,000 was paid in cash and the balance of $60,000 was evidenced by a vendor's lien note payable to the order of Cecil Orlan Bibby. The note provided for interest at the rate of 5 percent per annum with the principal payable in 20 equal annual installments

of $3,000 each, beginning on January 29, 1960, and a like installment being due and payable on or before the 29th day of each succeeding January until the whole principal is paid. The deed also provided that the interest payments were payable on the same dates as the principal payments.

The amount of taxable gain realized on the sale of the Deaf Smith County farm was $3,521.59. Respondent, in the statutory notice of deficiency herein, included this gain in petitioners' taxable income.

Neither petitioners nor the trust have ever reported any of the gain realized upon the sale of the Deaf Smith County farm.

On January 22, 1959, C. O. Bibby purchased a farm in Lamb County, Tex., for the sum of $125,000. This property was conveyed to C. O. Bibby by a warranty deed recorded in Lamb County, Tex., on March 5, 1959.

The following schedule sets forth the source of the funds used by petitioners to purchase the Lamb County farm:

| | | |
|---|---|---|
| Total purchase price | | $125,000 |
| Loan, Federal Land Bank of Houston | $36,100.00 | |
| Funds of LaVerne and Kathy Bibby withdrawn from Littlefield Federal Savings & Loan | 6,158.42 | |
| Funds of petitioners withdrawn from Littlefield Federal Savings & Loan | 10,000.00 | |
| Escrow deposit, check of C. O. Bibby dated Jan. 22, 1959, drawn on the First National Bank of Littlefield | 12,500.00 | |
| Check of C. O. Bibby dated Mar. 5, 1959, drawn on First National Bank, Amherst, Tex. | 60,241.58 | |
| | | 125,000 |

The $36,100 borrowed from the Federal Land Bank of Houston was evidenced by a deed of trust executed on February 18, 1959, by C. O. Bibby and Marie Bibby. The deed of trust included all of the property described in the warranty deed which conveyed the farm to petitioners, except approximately 6 acres which was designated and set aside by petitioners as their homestead. This deed of trust was recorded in Lamb County, Tex., on March 5, 1959.

Funds of Kathy and LaVerne in the amount of $6,158.42 were withdrawn from the Littlefield Savings & Loan account on March 5, 1959, and applied on the purchase price of the Lamb County farm.

The check of C. O. Bibby in the amount of $60,241.58 which was used to apply on the purchase price of the Lamb County farm included the following deposits made to the account of C. O. Bibby in the First National Bank of Amherst, Tex.:

Check dated Feb. 9, 1959, drawn on Olton State Bank___ $25,929.41
Check dated Feb. 9, 1959, drawn on Citizens State Bank,
   Earth, Tex_____ 11,000.00
Check dated Feb. 9, 1959, drawn on First State Bank,
   Vegas, Tex_____ 12,447.58
Deposit, representing downpayment of $10,000 received
   on sale of Deaf Smith County farm and $1,350.32
   reimbursement for farm expenses_____ 11,350.32
                                                      60,727.31

No warranty deed or any instrument was ever executed by petitioners conveying the Lamb County farm to the trust.

The fiduciary income tax return filed by the trust for the year ended February 29, 1960, reported a net income of $2,313.82 which represented one-fifth of the earnings realized from the Lamb County farm. The return further reported an exemption of $100 and deduction for distribution to beneficiaries of $2,213.82, resulting in no taxable income.

Petitioners' income tax return for the year ended February 29, 1960, included in taxable income the sum of $11,331.92, which equaled four-fifths of the total profit of $14,164.91 reported from the operation of the Lamb County farm.

The fiduciary income tax return filed by the trust for the year ended February 28, 1961, reported net income in the amount of $4,745.01, one-fourth of the earnings realized from the Lamb County farm, as follows:

Total income _____ $31,313.92
Total expenses _____ 10,141.32

     Net profit (without allowance for depreciation)_ 21,172.60
¼ of profit reported by trust less depreciation of
   $548.14 _____ 4,745.01

The return further reported an exemption of $100 and a deduction for distribution to beneficiaries of $4,645.01, resulting in no taxable income for the year ended February 28, 1961.

The statutory notice of deficiency herein included the income reported by the trust for the years ended February 29, 1960, and February 28, 1961, in petitioners' taxable income.

Petitioners' income tax return for the year ended February 28, 1961, included in taxable income the sum of $15,879.45, or three-fourths of the total income reported from the operation of the Lamb County farm.

All of the income reported by the trust for the fiscal years ended February 29, 1960, and February 28, 1961, was used by petitioners to apply on the purchase price of the Lamb County farm. The principal payments of $3,000 made by Spinhirne, purchaser of the Deaf Smith County farm, in both of these fiscal years were also applied on the purchase price of the Lamb County farm.

Petitioners' reversionary interest in the Bibby trust property would take effect in possession or enjoyment within 10 years of the date the Deaf Smith County farm was transferred to the trust.

OPINION

The basic issue for decision is whether or not petitioners are taxable on the income reported by the trust in the taxable years ended February 28, 1959, February 29, 1960, and February 28, 1961. In order to resolve this issue it must first be decided whether or not the trust satisfied the requirements of subpart E of subchapter J of the 1954 Code (sec. 671 *et seq.*). The primary dispute between the parties relates to section 673(a) [2] which provides that the grantor of a trust is to be taxable on any portion of a trust in which he has a reversionary interest which will or may reasonably be expected to take effect within 10 years after the date of the transfer to the trust of that portion of income or corpus. Petitioners contend that their reversionary interest in the trust satisfies the 10-year rule; respondent contends that it does not.

We agree with respondent.

Petitioners contend that they intended to establish a trust whose duration would satisfy the 10-year requirement imposed by section 673(a); they present two alternative contentions to support their position that they did in fact succeed in complying with the statute. One contention might be described as an incorporation forward; the other, as a relation back. We view both as ineffective to cure the defects which inhere in the instant situation.

There are three significant events under petitioners' analysis. The central event is the execution by petitioners of the written trust agreement on September 3, 1957. Prior to this, in April 1957, a meeting took place in petitioners' home, attended by S. E. Hale, petitioners, and petitioners' daughter LaVerne. Subsequent to the September 3, 1957, execution of the trust agreement, on August 20, 1958, an undated warranty deed was recorded whereby petitioners conveyed the Deaf Smith County farm to themselves as trustees for their two daughters.

Petitioners' first contention is that they "made an oral conveyance of * * * [the Deaf Smith County farm] to a valid trust on September 3, 1957." They rely for this proposition on "their intent and understanding that the farm was in a trust for the benefit of their children as of April, 1957."

Texas law requires that a trust of real property must be in writing

---

[2] SEC. 673. REVERSIONARY INTERESTS.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception of that portion of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust.

in order to be valid. Tex. Rev. Civ. Stat., art. 7425b–7 (1943).[3] Thus it is clear that there could have been no valid oral conveyance by petitioners at the April 1957 meeting. Furthermore, the testimony of petitioners and their daughter LaVerne, as to what transpired at the meeting, is vague and indefinite. They testified at some points that an oral trust was set up and that the Deaf Smith County farm was put in trust at that time. Other portions of their testimony were to the effect that S. E. Hale was to set up the trust at a later date. From the facts before us (S. E. Hale being deceased at the time of trial), we believe that there was no attempt to create the trust that evening. There is no indication that any of the terms of a trust had been agreed upon, or that any attempt was made by petitioners to make a conveyance at that time. Cf. *J. L. Hearn, Agent*, 15 B.T.A. 1101 (1929).

The trust agreement which was executed by petitioners on September 3, 1957, was the result of the April 1957 discussion. It specified, in material part, that the agreement was entered into on September 3, 1957; that petitioners have "this day" conveyed "the property shown on the Schedule attached hereto"; and that "The term of this Trust shall be for ten years and one day from the date of the execution hereof," or the earlier death of the beneficiaries.

Petitioners do not dispute the fact that no schedule was in fact attached to the trust agreement, but contend that it was understood by the parties to the trust, as early as the April 1957 meeting, that the Deaf Smith County farm was to constitute the trust corpus. No deed conveying the farm to the trust was recorded, however, until August 20, 1958. There is no indication in the record before us that a delivery of the deed was made to Kathy and LaVerne before the recordation.

It is an elementary principle of trust law that in order for a trust to exist, it must have a res. In the instant case, no res was put into the trust at the time the trust agreement was signed. Although petitioners may have declared themselves to hold the farm as trustees for their

[3] Art. 7425b–7.  Requisites of a trust

An express trust may be created by one of the following means or methods :

A. A declaration in writing by the owner of the property that he holds it as trustee for another person, or persons, or for himself and another person or persons ; or

B. A written transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person or persons ; or

C. A transfer by will by the owner of property to another person or persons as trustee for a third person or persons ; provided that a natural person as trustee may be a beneficiary of any such trust.

D. An appointment by a person having a power of appointment to another person as trustee for the donee of the power or for a third person ; or

E. A promise by a person to another person whose rights thereunder are to be held in trust for a third person ; or

F. A beneficiary may be a co-trustee and the legal and equitable title to the trust estate shall not merge by reason thereof.  As amended Acts 1945, 49th Leg. p. 109, ch. 77 § 3.

Provided, however, that a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared :

1. By a written instrument subscribed by the trustor or by his agent thereunto duly authorized by writing ;

2. By any other instrument under which the trustee claims the estate affected.  Acts 1943, 48th Leg. p. 232, ch 148 § 7.

daughters prior to the execution of the trust agreement, still no *express* trust was created until the deed conveyance effected a compliance with the Texas statutes. Even if a constructive trust arose from petitioners' actions in April 1957, this would be insufficient to satisfy the statutory requirement, which gives a more restrictive meaning to the word "trust" than do courts of equity, and requires the existence of an express trust. *Estate of Alma Peck*, 15 T.C. 788 (1950); *Prudence Miller Trust*, 7 T.C. 1245 (1946); *Stoddard* v. *Eaton*, 22 F. 2d 184 (D. Conn. 1927).

Since the April 1957 meeting did not result in the creation of a trust due to the lack of a writing, and the September 3, 1957, trust agreement lacked the res necessary to a valid trust, can the two events, when taken together provide the essential elements of a valid trust? We think not. The statutory requirements of the Texas Trust Act are clear, and although a settlor's intention is an important factor in the general law of trusts, it cannot cure the defects which exist in petitioners' attempt to comply therewith. Petitioners do not contend that the trust agreement alone (which lacked the description or identification of the trust property) was sufficient to comply with the statute. The intention to place the property in trust is not the equivalent of actually complying with the statutory requirement that all conveyances of real property be in writing, Tex. Rev. Civ. Stat. art. 1288, and *Garcia* v. *Garcia De Ortiz*, 257 S.W. 2d 804 (Tex. Civ. App. 1953), or more fundamentally that a conveyance be made.[4] No valid conveyance under Texas law was made herein until after the signing of the trust deed by petitioners on September 3, 1957.

Respondent does not dispute the fact that a valid conveyance of the Deaf Smith County farm was made on August 20, 1958. He contends, however, that the term of the trust commenced at that time, and was to end on September 4, 1967, so that the 10-year requirement for a valid Clifford trust was not satisfied. Petitioner contends that either the recordation of the deed related back to the execution of the trust agreement or that the 10-year and 1-day term of the trust did not commence until the deed was recorded on August 20, 1958. We agree with respondent.

The trust agreement provides explicitly that "The term of this Trust shall be for ten years and one day from the date of the execution hereof." The agreement was dated September 3, 1957, by petitioners and signed by them on that date. Though petitioners un-

---

[4] Petitioners' explanation of how the intention to make a valid conveyance somehow results in such a conveyance actually being made is strikingly similar to the explanation given by Ko-Ko, the Lord High Executioner, to the Mikado of Japan in Gilbert and Sullivan's operetta. To show how it could be that, although the Mikado had ordered an execution, the would-be victim was not yet deceased, Ko-Ko explained:

> When your Majesty says, "Let a thing be done," it's as good as done—practically, it *is* done—because your Majesty's will is law. Your Majesty says, "Kill a gentleman," and a gentleman is told off to be killed. Consequently, that gentleman is as good as dead— practically, he *is* dead—and if he is dead, why not say so?

Unlike the Mikado, we do not find the syllogism sufficiently persuasive.

doubtedly desired to comply with the requirements for a Clifford trust, the trust agreement set a fixed termination date (Sept. 4, 1967), undoubtedly because of the erroneous belief that a valid trust was being established by the transfer of the farm property to the trust at that time. Since the farm property was not properly deeded to the trust until August 20, 1958, the requirements of a valid Clifford trust have not been met because the property has been put in trust for less than 10 years.

At trial and on brief, petitioners made an effort to demonstrate that S. E. Hale's ability as a draftsman was not of the highest caliber. Unfortunately, they must suffer for any such inadequacy despite an able attempt by their attorneys herein to correct the flaws. This Court does not possess the equity power sufficient to reform the transactions according to the petitioners' intentions. Any uncertainties and omissions are of petitioners' own making and doubts raised thereby are fairly resolved against them. *Louis J. Reizenstein,* 22 T.C. 843 (1954).

Petitioners raise an alternative contention that if no trust was validly created then their daughters were partners in the farm properties. Because we have determined that a valid trust was not created until sometime after September 3, 1957, and before August 20, 1958, we do not reach this contention. Neither need we consider whether or not the substitution of the Lamb County farm was proper.

*Decision will be entered under Rule 50.*