WILLIAM B. & PEGGY J. MCGINNIS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent McGinnis v. Commissioner
Docket Nos. 26865-90, 26866-90, 26867-90, 26868-90, 26869-90, 8614-91
United States Tax Court
T.C. Memo 1993-45; 1993 Tax Ct. Memo LEXIS 36; 65 T.C.M. (CCH) 1870; February 3, 1993, Filed *36 Decisions will be entered under Rule 155. For Petitioners: James J. Sauter. For Respondent: Merle L. Stolar and Janet J. Johnson. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Chief Judge: Respondent determined deficiencies in and an addition to petitioners' Federal income taxes as follows: Petitioners
William B. and Peggy J. McGinnis Docket No. 26865-90 Year
Deficiencies
1980
$ 19,313.44
1981
18,477.63
Docket No. 8614-91 Year
Deficiencies
1983 $ 25,677.80
1985 60,626.44
1986 4,404.15
Petitioner
Kathleen A. Tosie (formerly McGinnis) Docket No. 26866-90 Year
Deficiencies
1981 $ 2,184
1982 7,064
1983 3,374
Petitioner
Colleen L. McGinnis Docket No. 26867-90 Addition to Tax
Year
Deficiencies
Sec. 6651(a)
1981
$   304
-
1982
6,887
-
1983
2,594
$ 129.69
Petitioners
Patrick A. and Kathleen A. Tosie Docket No. 26868-90 Year
Deficiency
1985
$ 754
Petitioner
David P. McGinnis Docket No. 26869-90 Year
Deficiencies
1982
$ 7,818
1983
7,648
1985
1,558
All section references are to the Internal Revenue Code in effect for *37 the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues for decision are: (1) Whether, pursuant to the grantor trust provisions contained in sections 671 through 679, William B. McGinnis (Mr. McGinnis) should be treated as the owner of three living trusts established for his children; (2) whether the transfer by William B. and Peggy J. McGinnis (Mr. and Mrs. McGinnis) of an absolute right to 45 percent of leasehold interests constitutes an anticipatory assignment of income; (3) whether Mr. and Mrs. McGinnis should be treated as the owners of the Clifford trusts set up for their children pursuant to sections 671 through 679; and (4) whether respondent properly determined a deficiency pursuant to section 7872 for imputed interest on below-market interest loans made in 1985 and 1986 by Mr. McGinnis to his wholly owned corporation. FINDINGS OF FACT The parties submitted these cases fully stipulated pursuant to Rule 122(a). The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of filing the petitions in these cases, all petitioners resided in St. Louis, *38 Missouri. 1. Living Trusts
On July 21, 1980, Mr. McGinnis, as grantor, established a revocable living trust for each of his three children pursuant to a written trust agreement. The trusts were initially funded with $ 100,000 interest-free demand loans made by Mr. McGinnis to each trust. On October 17, 1980, Mr. McGinnis provided additional funding by making interest-free demand loans of $ 33,333.33 to each trust. The written trust agreement named James J. Sauter trustee and provided that the trusts would terminate when demand was made on the demand notes or in the event of the death of the beneficiary. 2. Clifford Trusts
On April 1, 1974, Mr. and Mrs. McGinnis as grantors established three separate short-term irrevocable trusts, one for each of their three children. The written trust agreements provided that: (1) The trusts would continue irrevocably for 10 years and 1 day from the date of inception, and (2) Mr. and Mrs. McGinnis had no right to any of the income for that period. The trusts were structured in an apparent effort to comply with section 673(a) which is a codification and modification of regulations enacted to clarify the holding of Helvering v. Clifford, 309 U.S. 331 (1940), *39 and its progeny. Trusts that satisfy section 673(a) are commonly referred to as Clifford trusts. Mr. and Mrs. McGinnis funded each of the three Clifford trusts [2] with an undivided 15-percent interest in two commercial property leases thereby transferring 45 percent of their total interest in those leases. One of the leases was between Mr. and Mrs. McGinnis and Mr. McGinnis' wholly owned corporation, Custom Builders Corporation of St. Louis (Custom Builders). The other lease was between Mr. and Mrs. McGinnis and Custom Builders' wholly owned subsidiary, Westoak Realty and Investment, Inc. (Westoak Realty). Besides their interest in the leases, Mr. and Mrs. McGinnis did not transfer any other property interest to the Clifford trusts. The lease between Mr. and Mrs. McGinnis and Custom Builders commenced July 2, 1972, and terminated July 1, 1977. At the time the trust agreements *40 were executed, the remaining life of the lease was 39 months. The lease did not provide for renewal. A note was written on the lease document stating "Another lease exists with Westoak with the same terms as this one [initials undiscernible]. This lease was extended through the term of the trust at the stated terms." The lease between Mr. and Mrs. McGinnis and Westoak Realty commenced July 2, 1973, and terminated January 1, 1978. When the trust agreements were executed, the remaining life of the lease was 45 months. The lease did not provide for renewal. 3. Loans
In addition to the above-described transactions, Mr. McGinnis loaned money to his wholly owned corporation and its subsidiaries. The loan terms are not part of the record. The corporation and its subsidiaries treated the outstanding balances as loan transactions on their corporate books. No interest was accrued or paid on any of the outstanding balances. OPINION The first issue for decision is whether the grantor trust provisions contained in sections 671 through 679 cause Mr. McGinnis to be treated as the owner of the three living trusts established for his children. Section 671 provides that if a grantor *41 is treated as the owner of any portion of a trust, all of the income, deductions, and credits attributable to that portion are attributable to the grantor. Sections 673 through 677 define the circumstances under which a grantor shall be treated as the owner of a portion of a trust. Section 674(a) provides: (a) General Rule. -- The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party. In brief, a grantor will be treated as the owner of any portion of a trust over which the grantor possesses an independent power of disposition respecting the beneficial enjoyment of the corpus or income. Mr. McGinnis, grantor of the children's trusts, had the absolute right to demand immediate repayment of his loans to the trusts, in which event the trusts would terminate. The trusts were funded with his loans. As we see it, Mr. McGinnis' ability to demand repayment of the loans enabled him to maintain an unchecked power of disposition over the beneficial *42 enjoyment of the trusts' corpus. Consistent with our prior decisions in this area, we hold that Mr. McGinnis is to be treated as owner of the trusts he thus controlled. See Kushner v. Commissioner, T.C. Memo. 1991-26, affd. without published opinion 955 F.2d 41 (4th Cir. 1992); Wysong v. Commissioner, T.C. Memo. 1988-344; Batson v. Commissioner, T.C. Memo. 1983-545, affd. without published opinion 758 F.2d 652 (6th Cir. 1985). Petitioners, relying on Dickman v. Commissioner, 465 U.S. 330 (1984), a gift tax case, contend that Mr. McGinnis did not control the trusts' "corpus" as they define that term. In their view, where (as here) a grantor lends money to a trust interest-free, the trusts' corpus does not consist of the money itself, but instead the corpus is limited to the amount on which the grantor would pay gift tax, i.e., the value of the trusts' right to the interest-free use of the money. We disagree. It is commonly understood that the corpus of a trust is the mass of assets the trust has to invest *43 or use. The term "corpus" is commonly defined as the main body or principal of a trust as distinguished from interest or income. Black's Law Dictionary 343 (6th ed. 1991). Thus, the corpus of each of the trusts here comprised the funds that Mr. McGinnis lent to the trusts, over which he retained control for purposes of section 674 by reason of his unfettered right to demand repayment of the loans at any time. Petitioners' anomalous view of corpus is at odds with the basic definition of that term and ignores that the gift tax and income tax provisions are not in pari materia in this respect. See Estate of Jalkut v. Commissioner, 96 T.C. 675, 681-682 (1991). Accordingly, this contention does not persuade us that the income of the trust is not attributable to Mr. McGinnis. The second issue for decision is whether Mr. and Mrs. McGinnis are to be taxed on the income from the leasehold interests transferred to the three short-term irrevocable trusts (Clifford trusts) set up for their children. Respondent classifies the transfers as an anticipatory assignment of income which would require that the income be taxable to the assignors. Petitioners argue *44 that the irrevocable assignment of a portion of their leasehold interests in real property is not an assignment of income, but a transfer of a property right from which income will flow. Petitioners further argue that income received by the beneficiaries on the leasehold interests is taxable to the beneficiaries. Taxpayers can usually benefit if they can assign income and its tax consequences to members of their families. One potential benefit is "income splitting". Because the tax system is progressive in nature, the first dollars earned by a taxpayer are taxed at a lower rate than the last dollars. By splitting the income from the leasehold interests between the three children's trusts and themselves, Mr. and Mrs. McGinnis could have taken advantage of three additional lower brackets. [3] See Pfluger v. Commissioner, 840 F.2d 1379 (7th Cir. 1988); Schulz v. Commissioner, 686 F.2d 490 (7th Cir. 1982). *45 Responding to taxpayer attempts to shift income, the Supreme Court has consistently held that the taxpayer who retains property from which income is produced is taxable on that income regardless of an assignment which divests the taxpayer of control over the income. In a seminal case, a taxpayer attempted to assign income to his wife by assigning a portion of his earnings to her pursuant to a written contract. The Supreme Court held that the earnings were taxable to the taxpayer and analogized the arrangement to an attempt to attribute fruit to a different tree from that on which it grew. Lucas v. Earl, 281 U.S. 111, 115 (1930). Another failed attempt to assign income and tax consequence occurred when a father detached negotiable interest coupons from his bonds and gave the coupons to his son. The Supreme Court recognized that the son had acquired full title and dominion over the interest coupons, but held for tax purposes the income was taxable to the father because he retained control over the bonds that were the source of the income. Helvering v. Horst, 311 U.S. 112 (1940). Similarly, an insurance agent's renewal *46 commissions assigned to a trust benefitting other family members were taxable to the insurance agent. Helvering v. Eubank, 311 U.S. 122 (1940). Summarizing its previous holdings, the Court said in a later case that "one who is entitled to receive, at a future date, interest or compensation for services and who makes a gift of it by an anticipatory assignment, realizes taxable income quite as much as if he had collected the income and paid it over to the object of his bounty." Harrison v. Schaffner, 312 U.S. 579, 580 (1941). The Court stated that the power to dispose of income is the equivalent of ownership of it and held that an anticipatory assignment of trust income was taxable to the assignor because the assignor had parted with no substantial interest in property other than the income. [4]Id.
*47 We find that Mr. and Mrs. McGinnis assigned only income (the fruit) flowing from their property when they assigned each of the three trusts a 15-percent interest in the leasehold interests of the property. Consequently, Mr. and Mrs. McGinnis are taxable on the income assigned to the trusts under the principles of anticipatory assignment of income. Petitioners contend their assignment is analogous to the transfers in Blair v. Commissioner, 300 U.S. 5 (1937); Hawaiian Trust Co. v. Kanne, 172 F.2d 74 (9th Cir. 1949); Farkas v. Commissioner, 170 F.2d 201 (5th Cir. 1948), revg. 8 T.C. 1351 (1947). We disagree. These cases are distinguishable because they included not only an assignment of income, but an assignment of an interest in the property from which the income flowed. While recognizing that a leasehold interest may be an alienable property right, we also recognize that income from a leasehold interest undeniably flows from the property itself. Therefore, absent a transfer of the property itself, petitioners' reliance on the above-cited cases is misplaced. *48 Although we have found that the transfers of leasehold interests constitute an anticipatory assignment of income, we will respond to petitioners' contention that the terms of the trust qualify the transfers for exceptional treatment under 673(a). As applicable here section 673(a) [5] provides as follows: (a) General Rule. -- The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception of that portion of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust. In sum, section 673(a) provides a safe harbor under which a grantor who retains a reversionary interest in trust corpus or income is not treated as the owner of the trust under section 673 so long as the reversion will not occur within 10 years from the date of the inception of the trust. *49 Section 673(a) represents a codification and modification of the so-called Clifford regulations. The Clifford regulations incorporated rules that grew out of the decision of Helvering v. Clifford, 309 U.S. 331 (1940), and its progeny. In Clifford, a grantor retained absolute control over trust corpus but transferred to the beneficiary the right to income for a period not to exceed 5 years. Using the same analogy as in Lucas v. Earl, 281 U.S. 111 (1930) the Board of Tax Appeals held that the assignment was an impermissible attempt to shift income by attributing fruit to a different tree from that on which it grew. Clifford v. Commissioner, a Memorandum Opinion of the Board of Tax Appeals dated Sept. 26, 1938, revd. 105 F.2d 586 (8th Cir. 1939), affd. 209 U.S. 331 (1940). The Supreme Court agreed, holding that the grantor was the effective owner of the income. Helvering v. Clifford, supra.
Cases following Clifford were decided primarily on their specific facts and circumstances and no bright-line test emerged. Consequently, *50 Treasury regulations were promulgated in an attempt to establish specific guidelines for determining when a grantor would be treated as an owner of a trust. T.D. 5488, 1946-1 C.B. 19. These regulations did not accomplish their objective and section 673(a) was enacted to establish fixed standards. 9 Mertens, Law of Federal Income Taxation, sec. 37.02, at 5 (1992 rev.). The 10-year safe harbor period under section 673(a) is measured at the time of each addition of corpus to the trust. Sec. 673(a); Bibby v. Commissioner, 44 T.C. 638 (1965); sec. 1.673(a)-1, Income Tax Regs.
The Clifford trust agreements executed by Mr. and Mrs. McGinnis were structured in an effort to satisfy section 673(a). The agreements provide that the trusts will have a term of 10 years and 1 day. However, each trust was funded at inception with an undivided 15-percent interest in leasehold interests that would expire before the requisite 10-year period. Although a handwritten note on one of the leases suggests that the lease was renewed for the 10-year term of the trust, there is no documentation or other evidence in the record to *51 confirm this or even when the notation was made. Moreover, it is clear that at the time the leasehold interests were transferred to the trusts the leases were due to expire in less than 5 years, and the leases do not provide for any type of automatic renewal. Given these circumstances, we conclude that Mr. and Mrs. McGinnis' leasehold interest could reasonably be expected to take effect in possession or enjoyment within 10 years of the date that the leases were transferred to the trusts. Consequently, we find that the transfer of the leasehold failed to meet the safe harbor of section 673(a). In sum, we hold that Mr. and Mrs. McGinnis are taxable on the income from the Clifford trusts established for their three children. The next issue for decision is whether respondent correctly determined a deficiency based on imputed interest arising from below-market interest loans which Mr. McGinnis made to his wholly owned corporation and its subsidiaries. Unfortunately, we do not know the terms or the amounts of the loans. We do know that these loans were recorded on the corporate books, but there was no accrual or payment of interest to Mr. McGinnis. Section 7872 requires that the *52 foregone interest from a below-market interest loan be treated as if transferred from the lender to the borrower and retransferred by the borrower to the lender as interest. [6]
The below-market interest rules of section 7872 do not apply to loans which lack significant effect on the Federal tax liability of the lender or the borrower. Sec. 1.7872-5T(b)(14), Temporary Income Tax Regs., 50 Fed. Reg. 33519 (Aug. 20, 1985). The determination of whether a loan is without significant tax effect is based upon all of the facts and circumstances. Sec. 1.7872-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 33519 *53 (Aug. 20, 1985). Factors to be considered include: (1) Whether items of income and deduction generated by the loan offset each other; (2) the amount of such items; (3) the cost to the taxpayer of complying with the provisions of section 7872 if such section were applied; and (4) any nontax reasons for deciding to structure the transaction as a below-market loan rather than a loan with interest at a rate equal to or greater than the applicable Federal rate and a payment by the lender to the borrower. Sec. 1.7872-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 33519 (Aug. 20, 1985). Petitioners have the burden of proving that respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Mr. and Mrs. McGinnis make two arguments regarding respondent's determination. First, on brief petitioners argue that "this has been a consistent * * * practice under the scrutiny of respondent since audits in 1974 without complaint from the service until now." It is well established that we will not look behind the deficiency notice to examine respondent's policy and procedure in making deficiency determinations. *54 Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974). We further note that section 7872 was enacted as part of the Deficit Reduction Act of 1984 and was effective on or after June 6, 1984. Pub. L. 98-369, 98 Stat. 494, 699 (1984). See Frazee v. Commissioner, 98 T.C. 554, 587-589 (1992). Second, Mr. and Mrs. McGinnis argue that the loans between Mr. McGinnis and his wholly owned company and its subsidiaries are exempted from section 7872 treatment because there is no significant effect on the tax liability of the parties to the transaction. Mr. and Mrs. McGinnis assert that the adjustments to their income related to the loans ($ 5,694.32 for 1985 and $ 5,313.77 for 1986) demonstrate that the loans have no significant tax effect. Mr. and Mrs. McGinnis further assert without explanation that they had nontax reasons for structuring the loans as they did. Mr. and Mrs. McGinnis apparently concede that, absent exemption, the loans in question are subject to section 7872. Specifically, we infer from their failure to produce evidence of the loan terms that loan documents do not exist or would prove adverse to their *55 case. It is well established that a party's failure to produce evidence within the party's possession that would be favorable to him leads to the presumption that if produced it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see Pietanza v. Commissioner, 92 T.C. 729 (1989), affd. 935 F.2d 1282 (3d Cir. 1991). The amount of the adjustments to Mr. and Mrs. McGinnis' income relating to the below-market loans does not persuade this Court that the below-market loans were without significant tax effect. In short, Mr. and Mrs. McGinnis have not met their burden of proving that respondent incorrectly determined a deficiency for imputed interest under section 7872. Finally, respondent determined an addition to tax under section 6651 for Colleen L. McGinnis' failure to file a tax return for the 1983 taxable year. This issue was not briefed by the parties, and no evidence was presented regarding this issue. We conclude that petitioner does not contest this addition to tax. We have considered *56 petitioners' other arguments, and find them unpersuasive. Because of concessions by the parties, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Kathleen A. Tosie (formerly McGinnis), docket No. 26866-90; Colleen L. McGinnis, docket No. 26867-90; Patrick A. & Kathleen A. Tosie, docket No. 26868-90; David P. McGinnis, docket No. 26869-90; William B. McGinnis and Peggy J. McGinnis, docket No. 8614-91.↩
2. We will apply to these trusts the term "Clifford trusts" for ease of reference, not to signify that they in fact qualify under sec. 673(a).↩
3. Because the years for which notices of deficiency were issued are not the same for all petitioners, we do not have tax returns to compare for all petitioners for all of the years at issue. The information we do have shows that the effect of income splitting was significant. Pursuant to sec. 1, the rate of tax on additional dollars of income for Mr. and Mrs. McGinnis would have been as follows: 1980
70%
1981
70%
1983
50%
1985
50%
1986
50%
By contrast, the highest rate of tax paid in the applicable years by any of the McGinnis children was as follows: ↩
1981
44%
(Kathleen)
1983
32%
(Kathleen)
1985
33%
(Kathleen)
4. The situation here is closely analogous to Rev. Rul. 58-337, 1958-2 C.B 13, where a husband and wife owned property that they rented to a corporation under a 10-year lease. They formed a trust for the benefit of their minor children, with an attorney as trustee, and conveyed the lease to the trust, so that the trustee would receive all the rental income. The revenue ruling concluded that the arrangement was ineffective to relieve the grantors from tax upon the rental income: Prior to the creation of the trust in the instant case, the fee owners [the husband and wife] had carved out of their ownership two separate estates, a leasehold and a reversion. The leasehold was then made the subject of the trust here involved. When a fee owner/lessor assigns a lease without assigning the reversion, only the right to the rents passes to the assignee. Accordingly, the assignment of the lease in trust without an attendant assignment of the reversion constitutes an assignment of income for which the grantor remains taxable, since he may not escape the tax on his income by giving it away or assigning the right to receive it in advance of payment. * * * [1958-2 C.B. at 13.] Although revenue rulings are not binding on this Court, we find the reasoning of this longstanding revenue ruling to be useful in analyzing the present case.↩
5. Sec. 673(a) was amended by sec. 1402(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2711-2712, effective for transfers in trust made after March 1, 1986.↩
6. Section 7872: (a) Treatment Of Gift Loans And Demand Loans. -- (1) In General. -- For purposes of this title, in the case of any below-market loan to which this section applies and which is a gift loan or demand loan, the foregone interest shall be treated as -- (A) transferred from the lender to the borrower, and (B) retransferred by the borrower to the lender as interest.↩